## KIMMELL et al. v. GOEHLER et ux.

No. 12757—Opinion Filed April 15, 1924.

Rehearing Denied June 10, 1924.

**1. Trial—Instructions—Covering Issues.**

Each party to a controversy is entitled to have his theory of the case presented to the jury by proper instruction, provided the same has been properly pleaded and he has introduced evidence tending to support such theory.

**2. Appeal and Error — Harmless Error — Rulings on Evidence.**

The improper admission or rejection of evidence, if not prejudicial to the party complaining, is not ground for reversal.

**3. Same.**

Record examined, and held, that the admission of the evidence complained of was not prejudicial to plaintiffs in error.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Tillman County; Frank Mathews. Judge.

Action by George W. Goehler and Annie Lee Goehler against E. M. Kimmell and Fred Varner. Judgment for plaintiffs, and defendants bring error. Affirmed.

P. Mounts, W. H. Hussey, and Herman S. Davis, for plaintiffs in error.

Wilson & Roe, for defendants in error.

Opinion by JARMAN, C. This action was brought in the district court of Tillman county by George W. Goehler and Annie L. Goehler to recover the sum of $5,000, alleged to have been fraudulently retained by the defendants. Verdict was for the plaintiffs for $3,000, on which judgment was rendered, and the defendants bring error.

The plaintiffs were the owners of 160 acres of land located in Tillman county, which they purchased from Alvin T. Clark, and Clark retained a one-half interest in the oil and mineral rights. The plaintiffs gave an oil and gas lease on 40 acres of the land to O. E. Maple; the lease purported to cover the entire mineral rights in and to said 40 acres, whereas Goehler had only a one-half interest therein. In order to clear the title to this 40 acre lease, Maple made a proposition to Fred Varner, one of the defendants, to procure a quitclaim deed from the Clark heirs, Mr. Clark having died, to an undivided one-half interest in the oil and mineral rights in the 160 acres that Clark had reserved, and, upon Varner's assigning or giving to Maple a lease on the 40 acre tract he was to pay Varner $4,000, and then Varner and Maple were to be equally interested in the one-half interest in the oil and mineral rights in the remaining 120 acres. Varner procured a quitclaim deed from the Clark heirs to their one-half interest in the mineral rights of the 160 acres and Varner then gave Maple a lease on the 40 acres. Varner did not convey to Maple the royalty interest or rights in the 40 acre tract and this made Goehler and Varner own equally the one-eighth royalty in and to the entire 160 acres. R. P. Ralston purchased one-half of the royalty interest of Varner and Goehler in the 160 acres for $40,000, which included a one-thirty-second interest, each, of Varner and Goehler in the royalty rights.

The plaintiffs allege that the defendants, Varner and Kimmell, represented that they had purchased from the Clark heirs, and were the owners of a one-half interest in the oil and gas rights in this 160 acre tract of land, and that they had a right to sell the same; that they had a purchaser for a one-

sixteenth royalty interest in the 160 acres, but, in order to make a complete title, it was necessary that the plaintiffs join with the defendants in the sale of said one-sixteenth royalty interest, which would include a one-thirty-second royalty interest of the plaintiffs; that the defendants represented that they were selling the one-sixteenth royalty interest to parties in Wichita, Kan., for the total sum of $30,000, and that they would give the plaintiffs an equal division of all money that the defendants received for the sale of said one-sixteenth royalty interest, and, relying upon these representations and believing them to be true, the plaintiffs joined the defendants in the royalty deed, conveying one-half of the royalty, and the defendants paid the plaintiffs $15,000 as their part of the proceeds of said sale.

The defendants received $40,000 for the sale of the one-sixteenth royalty interest, and the plaintiffs, upon learning of this, brought this action to recover the $5,000 balance the plaintiffs claim to be due on their one-half of the royalty. The defendants allege that the defendant Kimmell had no interest in the royalty but that he was merely acting as the agent for the defendant Varner and the plaintiffs in the sale thereof, and that, at the time the plaintiffs agreed to sell their one-thirty-second royalty interest, the plaintiffs agreed to accept $15,000 therefor; that it was further agreed and understood that Kimmell, the agent negotiating said sale, was to retain his commission out of the purchase price and that the $10,000 which Kimmell retained, over and above the $30,000, was his commission.

The first assignment of error urged by the defendants is that the court erred in giving the following instruction to the jury:

"You are further instructed that if you find and believe from the evidence that the defendant, Kimmell, was acting as the agent of the plaintiffs in the sale of the royalty in question and that it was the general custom where no commission was agreed upon and only a net price was given for the broker to sell the property for such sum as he might receive for the property in excess of the price listed and for his commission or reward for his services he would receive above the net price, then your verdict will be for the defendants.

"However, you are further instructed that if you find and believe from the evidence that no such general custom prevailed in and around Grandfield, Okla., and that the defendant, E. M. Kimmell, was acting as such agent then you are instructed that your verdict should be for the plaintiffs in the

sum of $5,000, less the usual and customary commission allowed brokers in that locality for the sale of oil and gas leases, together with six per cent. interest on said difference from June 6, 1919."

There was evidence produced to show that the customary commission, in the absence of a specific agreement as to the amount a broker was to receive, was ten per cent. of the amount for which the property sold. The one-half interest of the plaintiffs in the total purchase price of the royalty was $20,000, and ten per cent. of that amount deducted from the $5,000 retained by the defendants, left a balance of $3,000, for which the jury returned a verdict. As stated by the defendants, it is quite clear that the jury arrived at their verdict in this case in this manner, under the above instruction complained of.

The only objection made by the defendants to this instruction is that it was prejudicial to their interests and was unauthorized, because the plaintiffs based their action solely upon the ground that the defendants had, by fraud and deceit, retained $5,000 of the purchase price, and that there was no issue or contention, on the part of the plaintiffs, of agency. However, one of the defenses of the defendants is that Kimmell merely acted as the agent of the plaintiffs in the sale of said royalty interest. Evidence was introduced on this issue under the theory of the defendants, and it was the duty of the court to instruct on the theory of both parties, and the giving of this instruction was not error. Menten v. Richards, 54 Okla. 418, 153 Pac. 1177.

The defendants next contend that the court erred in admitting incompetent evidence, which was prejudicial to the rights of the defendants. The evidence, complained of, is that of O. E. Maple, wherein he testified to a conversation in which the defendant, Varner, told the witness that one-half of the royalty was sold for $30,000, and that afterwards the witness learned it was sold for $40,000; and the witness further testified to a settlement he had with the defendants for the sale of this royalty, in which the witness was interested with the defendants. We think this evidence was admissible under the plaintiffs' theory; at any rate, it is clear that this evidence did not prejudice the rights of the defendants, because the jury based its verdict upon the theory that the defendants were acting as agents of the plaintiffs, as heretofore pointed out, and, therefore, his evidence was not prejudicial and would not justify a re-

versal of the judgment of the trial court.

No prejudicial error appearing, the judgment of the trial court is affirmed.

By the Court: It is so ordered.